IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| NICOLAS LOPEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. CIV-10-584-HE |
| | ) | |
| FARMERS INSURANCE COMPANY, | ) | |
| INC., a Kansas corporation; and | ) | |
| FARMERS INSURANCE EXCHANGE, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE THE
TESTIMONY AND/OR OPINIONS OF DEFENDANT'S PROPOSED
EXPERT, MICHAEL J. BERRYMAN, AND BRIEF IN SUPPORT**

Plaintiff, through his undersigned attorney of record, hereby respectfully requests and moves this Court to grant this Motion in Limine and enter an Order in Limine precluding the presentation by Defendants, to this Court or to the jury, of the testimony of their proposed expert witness, Michael J. Berryman, for the reason that his testimony does not meet the standards set forth in *Daubert v. Merrell Dow Pharmaceuticals*, *Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). In support of this Motion, Plaintiff submits the following brief in support.

**I.      Statement of the Case**

On February 10, 2009, a severe hail and wind storm passed through Oklahoma City, and in particular, the Remington Subdivision in Northwest Oklahoma City, where Mr. Lopez has lived since 1992. Expert meteorology testimony will establish the hail ranged from golf ball size to baseball size. Thousands of homes in Northwest Oklahoma City sustained heavy hail and wind damage. In March 2009, Mr. Lopez had his wood shingle roof inspected by Neil Cagle with All American Roofing. Mr. Cagle found considerable hail and wind damage to Mr. Lopez's

1

roof and advised that the roof needed to be replaced. Mr. Cagle suggested to Mr. Lopez that he contact his insurance company.

Due to other urgent business matters occupying Mr. Lopez's time, he did not report the claim to Farmers until October 15, 2009, at which time he began noticing water spots to the interior ceiling of his home.

Defendants' claim representative Natalie Ortiz Merritt inspected Plaintiff's roof, accompanied by Plaintiff's roofer Neil Cagle, on November 2, 2009. On the same day, Ms. Ortiz Merritt authored a letter to Mr. Lopez, wherein she advised that during her inspection, she observed hail damage to only two exhaust caps and interior water damage to the ceilings in the kitchen and utility room. She further advised that all other damage she observed to the roof was related to wear and tear. Merritt estimated the cost to replace the two exhaust caps was less than Plaintiff's $1000 deductible and denied further benefits based on the policy exclusion for wear and tear, marring, and deterioration.

Mr. Lopez faxed an estimate from All American Roofing to Farmers on November 4, 2009, reflecting estimated damage/cost of replacement of Plaintiff's roof at $42,010.79, and he asked for a re-inspection. The next day, Plaintiff was advised by a Defendant claim representative that it had received Mr. Cagle's estimate; however, since Mr. Cagle was present at the initial inspection on November 2, 2009, no re-inspection would be scheduled. Plaintiff filed suit against Defendant Farmers Insurance Company in May, 2010. Defendant Farmers Insurance Exchange was added as a Defendant on July 29, 2010.

Plaintiff's breach of contract claim arises because of Defendants' failure to pay for the damage to his roof that is covered under his policy of insurance. Plaintiff also contends that Defendants failed to recognize the damage due to an improper investigation and evaluation of

Plaintiff's claim. Plaintiff further alleges that Defendants have unreasonably withheld payment of his homeowner's policy benefits, which is the essence of a bad faith claim.

## II.   Introduction

Defendants have endorsed Michael J. Berryman as an expert witness to offer opinion testimony that Defendants' denial of Plaintiff's claim, based upon its claim adjuster's (Natalie Ortiz Merritt's) finding of limited hail damages at Plaintiff's home, was reasonable. Specifically, Mr. Berryman is expected to testify that (1) Plaintiff's experts' opinions are based on premises, assumptions and probabilities; (2) Merritt's finding of limited hail damage was reasonable.

## III.   Court as Gatekeeper

Fed.R.Evid. 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Trial courts have a gatekeeping function to ensure both the relevance and reliability of scientific expert testimony. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Fed.R.Evid. 702 also applies to non-scientific expert testimony. In *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 156, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), the Supreme Court recognized that "an expert might draw a conclusion from a set of observations based on extensive and specialized experience." *Id.* Under Fed.R.Evid. 702, the trial court must satisfy itself that the proposed expert testimony is both reliable and relevant, "in

that it will assist the trier of fact, before permitting a jury to assess such testimony." *United States v. Rodriguez-Felix,* 450 F.3d 1117, 1122 (10th Cir.2006).

To make a reliability determination, trial courts examine four factors:

(1) whether a theory has been or can be testified or falsified; (2) whether the theory or technique has been subject to peer review and publication; (3) whether there are known or potential rates of error with regard to specific techniques; and (4) whether the theory or approach as "general acceptance."

*Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2005)(*citing Daubert*). These same factors are utilized to determine the admissibility of non-technical expert testimony. *Kumho Tire*, 526 U.S. at 149. The factors are not an exhaustive list, and a "trial judge has wide discretion both in deciding how to assess an expert's reliability and in making a determination of that reliability." *Bitler*, 400 F.3d at 1233. However, "[n]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to the existing data only by the *ipse dixit* of the expert." *General Electric Co. v. Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997).

Fed.R.Evid. 702 has a second requirement: the proposed expert testimony must also "assist the trier of fact." This requirement goes primarily to relevance. *Daubert*, 509 U.S. at 591.

**IV.    Burden of Proof**

When making an admissibility determination under *Daubert*, the burden of proof lies with the party offering the witness. *Daubert*, 509 U.S. at 593, *n.* 10; *Student Marketing Group, Inc. v. College Partnerships, Inc.*, 247 Fed. Appx. 90 (10th Cir. 2007). The reliability of the evidence is determined by an application of the *Daubert* factors and/or other factors to ensure that "the expert, whether relying on 'professional studies or personal experience' will, when testifying, employ 'the same level of intellectual rigor' that the expert would use outside the courtroom…" *Bitler v. A.O. Smith Corp.*, 391 F.3d 1114, 1120 (10th Cir. 2004).

4

**V.     Mr. Berryman is Not Qualified to offer opinion testimony as a roofing expert or on the reasonableness of Defendants' claim handling, and His Testimony is Not Relevant Or Reliable**

The touchstone for admissibility of expert testimony is that it is relevant and helpful to the trier of fact, i.e. that it will assist the trier of fact to understand or to determine a fact in issue. Fed.R.Evid. 702; *Thompson v. State Farm Fire & Casualty Co.*, 34 F.3d 932, 941 (10th Cir. 1994).

Qualification:  Mr. Berryman's qualifications as a "roofing" expert are simply not established.  He has thirty-two (32) years of experience as a construction general contractor, formal education (bachelors of molecular biology), "training" which is not specified, and "knowledge previously acquired."  *See* **Exhibit A**, February 14, 2011 Berryman Report to Greg Givens, pg. 1.  He states

> I have been a general contractor since 1978 and have performed numerous property restoration projects for owners whose building structures have sustained damages.  I routinely examine structures for the extent and cause of sustained damages and submit construction proposals to the public for property restoration.  In the regular course of business I estimate the construction costs and outline the scope of work that is an integral part of my firm's offers to contract for needed property restoration.  I interface with insurance professionals in the course of business and have developed a keen understanding of the customary means, methods and pricing for the repair of damaged real property.

Exhibit A, pg. 1, 2.

Mr. Berryman elaborated on his experience, education and training at his deposition held March 8, 2011.   In Berryman Enterprises' 32 year history, he said the company has been involved in the construction and restoration business of residential and commercial structures. *See* **Exhibit B**, March 8, 2011 Deposition of Mike Berryman, p. 4:10 – 5:4.[1]   Between 1999-2007, Berryman Enterprises built approximately five residential homes. Exh.B, 5:1-4; 6:15 – 7:1. Berryman Enterprises provides commercial restoration services as well. Exh.B, 7:10 – 8:4.

---
[1] Hereafter, citations to Mr. Berryman's deposition will be to page : line.

5

Although Mr. Berryman submits bids on jobs as general contractor, Berry Enterprises typically does not do the roofing restoration roof; that aspect of restoration is subbed out. Exh.B, 8:22 – 9:22; 10:23 – 11:9.

Mr. Berryman admitted he has no formal education or training relating to roof replacement or roof construction. Exh.B, 16:7–13; 25:10-13. He obtained a general knowledge of how a roof is installed from experience and by reading manufacturers' literature, researching manufacturers' products and reading technical white papers accessed on the internet. Exh.B, 16:7-13, 25:19 – 26:7. Mr. Berryman agreed that 30 years as a general contractor does not make him an expert on roofing. Exh.B, 26:17-25.

Prior to 1987, Mr. Berryman was involved in the replacement of a three-tab asphalt composition roof on his mother's house. Exh.B, 17:7-20. From 1982 – 1987, he was not employed as a roofing contractor, but worked on roofs on approximately six homes. Exh.B, 18:6-23. From 1987-1994, Berryman Enterprises was involved in the replacement of approximately 500,000 square feet of roofing, which included single-family residential property, duplexes, apartments, and condominiums. Exh.B, 22:9-24:5. Approximately 30% of the actual roofing labor on that 500,000 square feet was performed by Berryman employees and Mr. Berryman was personally involved in the roofing labor "five percent" of the time, during 1992-1994. Exh.B, 12:20-13:12, 18-25. He estimated "in excess of 80 percent" of the 500,000 square feet of roof involved hail damage on mostly composition roofs. Exh.B, 24:21-25:9. Since 1994, Mr. Berryman estimated employees of Berryman Enterprises have actually been involved in the installation of approximately 5 to 10 roofs. Exh.B, 27:16-28:2.

During the year 2010, Mr. Berryman inspected about a dozen homes for damage due to wind and/or hail on asphalt roofs; he did not inspect any wood shake or wood shingle roofs

during 2010. Exh. B, 32:2-7; 32:23-33:3.  In 2009, Mr. Berryman inspected six or fewer wood shingle or wood shake roofs, "almost wholly" at the request of insurance companies. Exh.B, 33:21-34:16.

Mr. Berryman admitted he is not an insurance adjuster, has no training as an insurance adjuster, and has no experience as an insurance adjuster and he does not know what it means in the insurance industry to deal fairly and to act in good faith. Exh.B, 36:23-37:14.  Although he has worked around the insurance industry, Mr. Berryman does not know, and could not recite, any insurance industry standards applicable to claim handling, claim investigation, or claim evaluation. Exh.B. 38:12-18; 39:11-18.  Mr. Berryman admitted he is not an insurance claim handling expert. Exh.B, 39:19-23.

Mr. Berryman has no education, experience or specialized knowledge in the area of meteorology or meteorological data. Exh.B, 40:2-21.  Of the approximately 33 times he has given deposition or trial testimony about extent or valuation of damage, that testimony was nearly always sought or given at the request of defendants. Exh.B, 53:5-15.

"To qualify as an expert, the witness must possess "such skill, experience or knowledge in that particular field as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in his search for truth." *Dorn v. BMW of North America, LLC.*, 2010 WL 3913226 *4 (D.Kan. 2010), *citing Lifewise Mast Founding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 1998).  Plaintiff submits that Mr. Berryman's experience as a general contractor, with a bachelor's degree in molecular biology, who interfaces with insurance professionals, does not make him an expert on insurance evaluations and insurance investigation of roof damage claims.

Mr. Berryman's conclusions that all of Plaintiff's witnesses' observations or opinions are wrong are not based upon any specialized knowledge and are not based on specified relevant experience. Plaintiff submits Mr. Berryman should not be qualified as an expert witness to render opinions on the validity of meteorological reports and testimony or insurance claim handling and investigation reports and testimony. *See Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2000)(proffered expert testimony should be excluded if the court determines that the proffered expert is not qualified by "knowledge, skill, experience, training, or education" to render an expert opinion).

Reliability and Relevance:    Assuming the Court finds the proffered expert is qualified, this Court should still consider other factors to determine whether his testimony will assist the trier of fact:  (1) whether the testimony is relevant; (2) whether it is within the juror's common knowledge and experience; and (3) whether it will usurp the juror's role of evaluating a witness's credibility. *See U.S. v. Rodriguez-Felix*, 450 F.3d 1117, 1123 (10th Cir. 2006). Fed.R.Evid. 702 "dictates a common-sense inquiry of whether a juror would be able to understand the evidence without specialized knowledge concerning the subject." *U.S. v. McDonald*, 933 F.2d 1519, 1522 (10th Cir. 1991).

Mr. Berryman's February 14, 2011 Report to Defendants' counsel details his "observations, opinions and conclusions." *See* Exhibit A, Report of Michael J. Berryman (hereafter "Berryman's Report"). His observations, opinions and conclusions are not relevant in that they will not assist the trier of fact to understand or determine a fact in issue. His observations are not based upon any specialized knowledge derived through experience or training, do not require any degree of expertise that is not within the realm of a juror's common

knowledge and experience, and his conclusions about other witnesses' opinions usurp the role of the jury in evaluating witnesses' credibility.

Mr. Berryman makes the following observations, opinions and conclusions at pg. 7 of his Report with regard to Plaintiff's expert Ron Dixon's report:

> I examined Plaintiff expert Ron Dixon's report. Dixon, a certified consulting meteorologist, concluded that there was a 91% probability that hail impacted the Lopez residence on 2/10/09 and that the size of the hail was 1.75" or greater. Based upon this opinion he concluded that "hail occurred at the Lopez home during the afternoon of February 10, 2009 during the time period of 3:13 pm and 4:08 pm". Although he predicts a 91% certainty, it must be noted that 91% certainty is defined as: In a statistical sampling of 100 events that have the same characteristics, 91 will prove positive and 9 will prove negative. <u>Consequently, his prediction cannot guarantee that hail impacted the Lopez home and more importantly, it does not show that the roof was damaged by hail impact.</u>

(Exhibit A, pg. 7, emphasis added).

Mr. Berryman is not qualified as meteorological or a mathematical statistics expert. Exh.B, 37:25-38:19. He has a bachelor's degree in molecular biology and is employed as a "General Contractor/Consultant". Exh. A, pg. 11. Neither his Report nor his deposition testimony establishes that he has any greater expertise in evaluating meteorological statistics or any statistics than an average juror. Exh.B 70:2-71:4; 76:8-13; 86:5-17. His conclusion that Mr. Dixon's prediction cannot guarantee that hail impacted the Lopez home or that the roof was damaged by hail is a conclusion which is not based upon any specialized knowledge, training or experience. In fact, a jury could reach the same conclusion without the assistance of expert testimony. "[A]n expert does not assist a jury by making a logical inference that a jury could just as easily make itself." *Calder v. Blitz USA*, 2010 WL 4386913 (D. Utah 2010); *see also U.S. v. Fredette*, 315 F.3d 1235, 1240 (10th Cir. 2003)(expert testimony may be excluded where that testimony would "add [ ] nothing to the trial that a juror could not understand on the basis of

9

common sense.")  Mr. Berryman should be precluded from offering his opinion, which is not based upon any specialized knowledge, skill or expertise, of Mr. Dixon's report.

Next, Mr. Berryman attacks Plaintiff's expert Brian Webb's opinion that Plaintiff's roof was damaged by hail and wind.  After noting the bases of Mr. Webb's opinion and that Mr. Webb did not personally investigate Mr. Lopez' roof, Mr. Berryman states:

> His opinion that the Lopez roof was damaged by hail is based upon the circumstantial evidence that a storm exhibiting some wind and hail affected the Remington Subdivision, and since it damaged his personal home's roof, other roofs and the Lopez next door neighbor's roof, it must have damaged the Lopez roof.  <u>While Webb's assumptions and premises may indicate the possibility that hail damages occurred to a residential roof in Remington, they do not show that the Lopez roof was damaged</u>.

(Exhibit A, pg. 7, emphasis added)

For "expert" testimony to be admissible, the expert must have some "scientific, technical, or other specialized knowledge that will assist the trier of fact to understand the evidence or to determine a fact in issue."  Fed.R.Evid. 702.  Mr. Berryman's comments on Brian Webb's conclusions are not based upon any specialized knowledge or experience; rather, again, it is an observation which any juror could make without the assistance of any "expert" testimony.  "[A]n expert does not assist a jury by making a logical inference that a jury could just as easily make itself." *Calder*, *id.*; *see also Fredette*, 315 F.3d at 1240 (expert testimony may be excluded where that testimony would "add [ ] nothing to the trial that a juror could not understand on the basis of common sense.").

Mr. Berryman's "expert" opinion about Plaintiff's expert Diane Luther should also be disallowed.  On pages 8 and 9 of Berryman's Report, Mr. Berryman makes the following statements with regard to Ms. Luther's opinions:

> "It is common that two trained professionals can form differing opinions about the same observation(s)."

> "In my experience as a contractor and consultant in the building and insurance industries, the inspection for damage to a structure must focus on the evidence, or lack thereof, of direct physical damages to the subject structure. It is not uncommon for one property to be damaged by hail and another in close proximity to not be damaged by hail. Further, in my experience the provisions of one policy will differ from the provisions of another policy and it is impossible to generalize as to what individual insurance companies and/or policies and paid to replace and why."

Exhibit A, pg. 8. Mr. Berryman criticizes Ms. Luther's reliance on the Haag Engineering Report and surmises that "if Luther was accurate in her assessment, the water shedding capability of the roof would have been severely compromised and roof leaks would have become more widespread with time … if Luther was accurate in her damage assessment, damages to ancillary items would have been noted by Merritt …" Exhibit A, pg. 8.

Again, Mr. Berryman's opinion that "two trained professionals" can form different opinions simply does not help the trier of fact. Moreover, his instruction that an inspection must focus on the evidence is also not helpful. Lastly, he does not show, by specialized education, training or experience, that he has any specialized knowledge of the insurance industry, of their policy provisions, or what they pay to replace and why. "An expert witness who relies solely or primarily on experience "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *See* Advisory Committee Notes to the 2000 Amendments to Fed.R.Evid. 702. A party cannot sustain its burden under Rule 702 simply by asking the court to "tak[e] the expert's word for it." *Id*.; *see also Gen. Elec. Co. v. Joiner*, 522 U.S. at 146.

Berryman's methodology in attacking Plaintiff's experts and Ms. Luther's reliance on Ross Dixon's opinions and a Haag Engineering Report is not based on any specialized knowledge, training or experience. In fact, Mr. Berryman admitted that his disagreement with

Ms. Luther's reliance upon the Haag tests was based upon his "logical inference" that "any reasonable thinking person could realize that hail is not always going" to strike a roof in a perpendicular manner. Exh. B, 76:1-13. Mr. Berryman is not qualified to testify as an expert on insurance industry standards applicable to roof damage claims. He has no formal training or experience as an insurance adjuster or claims handler. Exh.B. 38:12-18; 39:11-23; 79:2-10. His conclusions that adjuster Merritt's observations and conclusions are "reasonable" were not based upon his own experience or his own personal examination of the damage to Plaintiff's roof. Mr. Berryman did not ever see Plaintiff's wood shake roof. Exh. B, 60:16-18; 60:25-61:8; 71:5-10. He based his opinion that Merritt's investigation was reasonable on his review of her deposition testimony, review of her photographs, review of Mr. Webb's deposition testimony, a meteorology report he pulled from the internet, and his opinion that Ross Dixon was wrong. Exh.B, 65:21-67:8, 24; 67:24-68:2; 70:2-71:4, 11-17. *Cf. Spearman v. St. Paul Fire & Marine Ins. Co.*, 138 F.Supp.2d 1088 (N.D.Ill. 2001)(roofing expert's opinion regarding cause of roof damage was reliable where he combined extensive experience in the field with a personal examination of the roof). Mr. Berryman's conclusions were propounded as self-serving arguments for the Defendants disguised as an expert's opinion. Exh.B, 94:23-96:7.

**VI.    Rule 403 Operates to Exclude the Proffered Testimony and Report**

Fed.R.Evid. 403 provides that relevant evidence may be excluded if its probative value is outweighed by danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or a needless presentation of cumulative evidence. "Expert testimony, like any other evidence, is subject to exclusion if it fails the Fed.R.Evid. 403 balancing test." *Thompson*, 34 F.3d at 941. As discussed above, Mr. Berryman's testimony is not properly supported by any scientific principles or appropriate methods; his training and

experience does not reflect specialized knowledge which will be helpful to the trier of fact. As such, the admission of his testimony would improperly mislead the jury, and any possible probative value is greatly outweighed by the danger of unfair prejudice. *See Thompson*, *id.* (where expert testimony is offered on an issue that a jury is capable of assessing for itself, it is plainly within the trial court's discretion to rule the testimony inadmissible because it would not assist the trier of fact and constitutes a needless presentation of evidence).

Because Mr. Berryman's proposed testimony is not helpful to the trier of fact, its admission would constitute a needless presentation of cumulative evidence, a waste of time, and mislead and confuse the jury. Accordingly, Plaintiff requests Mr. Berryman's testimony and qualifications and proposed testimony.

## CONCLUSION

WHEREFORE, for the above and foregoing reasons, Plaintiff, Nicholas Lopez, respectfully requests that the Court grant Plaintiff's Motion in Limine and enter an Order excluding the testimony of Michael Berryman, and award such other relief as may be just and proper.

Respectfully submitted,

/s/ *Kent R. McGuire*
Kent R. McGuire          OBA #13150
Joe E. White, Jr.          OBA #12930
WHITE & WEDDLE, P.C.
5532 N. Western
Oklahoma City, Oklahoma  73118
(405) 858-8899
(405) 858-8844 FAX
kent@whiteandweddle.com
joe@whiteandweddle.com

CERTIFICATE OF SERVICE

      I hereby certify that on the 15th day of March, 2011, I electronically transmitted the foregoing document to the Clerk of Court using the Electronic Case Filing (ECF) System for filing and transmittal of a notice of electronic filing to the following ECF registrants:

            Greg D. Givens
            Sheila R. Benson
            Edmonds Cole Law Firm
            7 S. Mickey Mantle Drive, Second Floor
            Oklahoma City, OK 73104

                            *s/ Kent R. McGuire*
                            Kent R. McGuire, OBA #13150