

# Berryman

426 N.W. 5TH
Oklahoma City, OK 73102
Off: (405) 235-4646
Fax: (405) 235-3311
Email: mberryman@berrymanokc.com

February 14, 2011

Greg Givens
Edmonds Cole Law Firm
7 S. Mickey Mantle Drive, Second Floor
Oklahoma City, Oklahoma 73104-2458

Re:  **Nicholas Lopez v. Farmers Insurance Company, Inc, a Kansas corporation; and Farmers Insurance Exchange
United States District Court
Western District of Oklahoma
Case #: CIV-10-584-HE
Berryman File #: 10-08-06E**

Dear Mr. Givens:

    On 10/15/09 Flavie and Nicholas Lopez reported to Farmer's Insurance Company that their residence, located at 4109 N. W. 143rd Street, Oklahoma City, Oklahoma, had suffered hail damage on 2/10/09. On October 21, 2010, I conducted a site inspection to determine the presence of damage to the exterior and interior of the home. I analyzed the Plaintiff's claim that Farmer's Insurance Company (Farmers) failed to properly examine and reach the proper determination concerning the alleged damages to the home.

    The following report details to date my pertinent observations, opinions and conclusions related thereto and can be changed only in writing by the undersigned. My opinions expressed herein were based upon my review of the documentation provided to me as well as the notes, photographs and observations made during my site visit on October 21, 2010. In forming my opinions I utilized my thirty-two (32) years experience as a construction general contractor as well as my formal education, training and knowledge previously acquired. I understand that discovery is in progress and this report is subject to modification should additional information become available to me.



EXHIBIT A

Lopez Residence                                              February 14, 2010
Oklahoma City, Oklahoma                                      2 of 16

I reviewed and considered the following documents:

## Document                              Bates #

Received letter dated 9/8/10 with copy of redacted claim file.
                                    NLCF0001-0064
Received Subpoena Duces Tecum for Documents to be produced
Received Neil Cagle deposition
Trial date set June 13, 2011   Expert reports due Feb 1, 2011
Letter dtd 12/28/10 with Ross Dixon's CD containing enclosed file materials.
Deposition of Natalie Merritt dtd 12/30/10
Letter dtd 1/25/11 moving expert reports deadline to Feb 15.
Letter dtd 2/4/11 with reports of Brian Webb and Diane Luther
Letter dtd 2/10/11 with deposition of Nicolas Lopez
Plaintiff's 10-12-97 insurance claim file

    I have been a general contractor since 1978 and have performed numerous property restoration projects for owners whose building structures have sustained damages. I routinely examine structures for the extent and cause of sustained damages and submit construction proposals to the public for property restoration. In the regular course of business I estimate the construction costs and outline the scope of work that is an integral part of my firm's offers to contract for needed property restoration. I interface with insurance professionals in the course of business and have developed a keen understanding of the customary means, methods and pricing for the repair of damaged real property.

## DESCRIPTION

    The 4109 Northwest 143rd Street structure was a one level, single family residential structure located in the Remington Subdivision of Oklahoma City. The home was constructed on a typical cast-in-place concrete footing and stem wall and was framed with dimensional lumber. It utilized asphalt composition shingles as roofing material. The exterior cladding of the structure was primarily brick veneer with some wood architectural treatments and for the purposes of this report the structure faced east.



## DISCUSSION/OBSERVATIONS

On October 21, 2010 I traveled to the subject residence to observe the roof covering and the interior of the home. The original wood shingle roof covering had been replaced with an architectural asphalt composition shingle.

The utility room exhibited a minor stain near the wall.



The kitchen/breakfast room also was stained in one area just inside the rear exterior door.



The master bedroom ceiling was a vaulted "tray" ceiling. I noted cracks at the changes in framing planes. These cosmetic drywall cracks were caused by wood framing deficiencies.



I also observed drywall nail head sets that had "popped" the drywall compound from the surface of the nail heads.



I noted that these areas had been previously patched. Mr. Lopez testified that the dislodged drywall compound was the result of the re-roofing process. The observed areas in the master bathroom exhibited no staining indicative of water infiltration through the roof covering.



I reviewed the Farmers claim file for the Lopez home concerning water intrusion through the roof on October, 1997. The adjuster notes indicated that a portion of the ceiling at the kitchen/breakfast room was stained by a roof leak. I examined the photograph and the location of the water stain and compared them to the location of the ceiling stain I observed during my site visit. The location and appearance of the 1997 stain looked similar to the stain I observed at the Lopez home in 2010.

I examined Plaintiff expert Ron Dixon's report. Dixon, a certified consulting meteorologist, concluded that there was a 91% probability that hail impacted the Lopez residence on 2/10/09 and that the size of the hail was 1.75" or greater. Based upon this opinion he concluded that "hail occurred at the Lopez home during the afternoon of February 10, 2009 during the time period of 3:13pm and 4:08 pm". Although he predicts a 91% certainty, it must be noted that 91% certainty is defined as: In a statistical sampling of 100 events that have the same characteristics, 91 will prove positive and 9 will prove negative. Consequently, his prediction cannot guarantee that hail impacted the Lopez home and more importantly, it does not show that the roof was damaged by hail impact.

Plaintiff expert Brian Webb, Premier Roofing and Construction, LLC also opined that the Lopez roof was damaged by hail and wind. His opinion is based on the following premises:

1. The 2/10/09 storm produced significant hail and high winds to the Remington Subdivision.
2. Hundreds of homes received new roofs in Remington due to wind and hail from the 2/10/09 storm.
3. He found wind and hail damages to the wood roof on the home next door to the Lopez home and his company replaced the roof.
4. The observations made by Mr. Cagle and Farmer's Adjuster Merritt were consistent with the type of damage he observed at other roofs in Remington, including the roof next door to the Lopez home.
5. Many homes, which he identified on a Remington Subdivision Plat, had roofs replaced following the storm. Presumably, the reason(s) for the replacements were always the 2/10/09 storm.
6. He believed that the photographs taken by Adjuster Merritt show damage consistent with wind and hail.

Webb did not personally investigate the Lopez roof. His opinion that the Lopez roof was damaged by hail is based upon the circumstantial evidence that a storm exhibiting some wind and hail affected the Remington Subdivision, and since it damaged his personal home's roof, other roofs and the Lopez next door neighbor's roof, it must have damaged the Lopez roof. While Webb's assumptions and premises may indicate the possibility that hail damages occurred to a residential roof in Remington, they do not show that the Lopez roof was damaged.

He opined that the observations of Cagle and Merritt of the Lopez roof were consistent with what he observed at other Remington Subdivision roofs. I examined the deposition of Neil Cagle, the Lopez roofing contractor and Natalie Merritt, the Farmers adjuster that inspected the Lopez roof. Cagle testified:

1. The roof was very old—he believed approximately 15 years old.
2. It was heavily deteriorated from age.
3. In his opinion, he did find damage but because of the roof's age, and the deterioration that comes with age, the roof would be an unlikely candidate for repair.
4. He took no photographs, made no detailed notes of missing shingles or how many shingles had fresh splits, and remembered no repairs.
5. If the Lopez roof would have been 5 years old, he believed "we would have been looking at a repair" (presumably instead of a replacement)
6. He saw fresh splits from hail impact on all slopes.
7. Extensive wear and tear to ridge caps would "certainly be normal".
8. Merritt did a "test square" on each of the four major slopes and "that would be normal".
9. Cagle believed that Merritt was professional and made her determination to the best of her ability. She examined every slope and took photographs. Merritt and Cagle disagreed as professionals on the presence of storm damages.
10. Cagle believes that missing and dislodged shingles can occur from wear, tear and deterioration.

Plaintiff expert Diane Luther opined that "Farmers put its interest above the Lopez's by not considering the evidence that would weigh in favor of paying the (Lopez) claim". It seemed that Luther based this opinion on her claim that Merritt:

1. *Disregarded the insured's (Lopez) roofer.* The deposition testimony of Cagle refutes this claim. Cagle's opinion was heard and considered by Merritt and Cagle was complimentary concerning Merritt's professionalism and demeanor. She simple disagreed with Cagle as a professional with respect to the presence of hail damages to the roof. It is common that two trained professionals can form differing opinions about the same observation(s).
2. *Did not investigate the clear evidence in the neighborhood that all the roofs were being replaced.* In my experience as a contractor and consultant in the building and insurance industries, the inspection for damage to a structure must focus on the evidence, or lack thereof, of direct physical damages to the subject structure. It is not uncommon for one property to be damaged by hail and another in close proximity to not be damaged by hail. Further, in my experience the provisions of one policy will differ from the provisions of another policy and it is impossible to generalize as to what individual insurance companies and/or policies and paid to replace and why.

Luther cites the Ross Dixon report's claim that the hail in the Lopez neighborhood was 1.75" and cites a Haag Engineering (Haag) report, "hail the size of 1.75"-2.0 inches would cause damage 90-100% of the time on wood roofs based on its study." I reviewed the Haag report and gleaned the following:

1. Haag's research utilized "manufactured" hailstones using tap water. These stones were known to be denser than naturally occurring hailstones and as such presented a "worst case" scenario.
2. All impacts were made perpendicular to the roofing product at ambient room temperature, thus, according to Haag, imparted maximum impact energy to the samples.
3. Haag defined damage to roofing as "a diminution of water-shedding capability or a reduction in the expected long-term life of the roofing material."

As established earlier in this report, Luther lacks proper foundation to conclude from Dixon's probability factor of 91% that the Lopez roof was impacted by hail; moreover, that the roof was damaged by hail. Equally important, she relies on Haag's test as proof that the Lopez roof was damaged but fails to discount Haag's reliance on denser-than-natural hailstones and perpendicular hail stone impacts employed in their testing procedures. The Lopez roof could not have been impacted by denser, "manufactured" hail stones and the impacts could not have all been perpendicular to the roof surface. If the Lopez roof was impacted by hail, the hail would have been less dense and delivered less of an impact than the "manufactured" hail used by Haag in their laboratory testing.

Luther believes that the Lopez home was hit with 1.75"-2.0" hail and that such impact would have a 90-100% probability of causing the damages that she believes were suffered by the Lopez roof. If the roof had been impacted with hail, especially of the size 1.75"-2.0", a 15 year old naturally deteriorated roof would have been decimated. Adjuster Merritt's photographs do not comport with Luther's opinion of the expected damages. Instead, the photographs show the extended wear and tear of a heavily deteriorated wood roof. Additionally, if Luther was accurate in her assessment, the water shedding capability of the roof would have been severely compromised and roof leaks would have become more widespread with time. Again, this was not the case. Based upon my site observations, only 2 small ceiling areas in the home were damaged by water intrusion: one in the kitchen/breakfast area and one in the utility room. If Luther was accurate in her damage assessment, damages to ancillary items would have been noted by Merritt, such as dented garage doors, damages to light gauge metal and plastic exterior contents, window screens and valley metal.

Lopez Residence  
Oklahoma City, Oklahoma

February 14, 2010  
10 of 16

## CONCLUSIONS

Plaintiff experts Dixon, Webb and Luther opine based on premises, assumptions, and probabilities. Webb believes that hail damaged the Lopez roof because other homes in the same subdivision suffered roof damages. Luther believes that the 1.75" and greater hail that Dixon predicted would have caused the roof to be a total loss. This is refuted by Adjuster Merritt's photographs. The level of destruction inflicted by 1.75"-2.0" hail should have caused the roof to leak in many areas—clearly more than the (2) that I observe during my site visit.

The most reliable sources for the condition of the roof are Cagle and Adjuster Merritt as they saw the roof first hand. Based upon the testimony of Cagle and Merritt, I believe that Merritt did a professional job in assessing the Plaintiff's hail damage claim. The four slopes of the roof were investigated and test squares were outlined and examined. Both Cagle and Merritt worked to identify shingle splits and pock marks but differed in their opinions as to hail damages and the signs of extended wear and roof deterioration due to age. Age, natural wear and tear were noted by both and can be seen in Merritt's photographs. Merritt relied not only on her observations of limited damages to the roof but also the lack of damages to ancillary items on the Lopez premises.

The roof has been replaced and can no longer be viewed. As all testimony and documents are considered, a finding by Merritt of limited hail damages at the Lopez home was reasonable.

Please find attached as a part of this report my current Curriculum Vitae. It lists publications I have authored during the last ten (10) years and all cases in which I have given testimony, both at deposition and trial over the last four (4) years. It also establishes my qualifications and my compensation.

Sincerely,

/s/

Michael J. Berryman  
BERRYMAN ENTERPRISES, INC.

# CURRICULUM VITAE

**Name:** Michael J. Berryman  
**Born:** September 23, 1957  
Lincoln, Nebraska

**Occupation:**

President and Chief Executive Officer  
Berryman Enterprises, Inc.  
General Contractor / Consultant  
426 N.W. 5th Street  
Oklahoma City, Oklahoma 73102

**Formal Education:**

B.A., Vanderbilt University 1979  
Molecular Biology

**Licenses:**

Qualifying Agent (QA) and/or Qualifying Managing Employee (QME) for licensure and/or operating authorization in the following states:

| | |
|---|---|
| Arkansas | Nebraska |
| Louisiana | Virginia |
| Mississippi | West Virginia |

**Honors, Awards:**

1996 Metro Journal Award  
1997 Metro Journal Award  
1998 Oklahoma Venture Forum Award  
1998 Metro Journal Award  
1999 Inc. 100 Award by Inc. Magazine and ICIC

**Building Codes:**

| | |
|---|---|
| UBC | Uniform Building Code |
| BOCA | Building Officials and Code Administration |
| SBCCI | Southern Building Code Congress International |
| IBC | International Building Code |

**Compensation Structure:**

Expert services and review, study, estimation and written opinions shall be billed at a rate of $195.00/ hour.

Expert services at deposition and trial shall be billed at $295.00/hour.

**Previous Depositions and Court Appearances:**

1) Craig Ellis v. David Clark
   Case #: CJ-2004-736L
   District Court of Cleveland County, State of Oklahoma
   Deposition Date: 02/13/07

2) John Roberts, Jr. v. Dickinson Theaters, Inc.
   Case #: CJ-2005-5305 –McAllister
   District Court of Tulsa County
   Deposition Date: 02/22/07

3) Craig Ellis v. David Clark
   Case #: CJ-2004-736L
   District Court of Cleveland County, State of Oklahoma
   Trial Testimony Date: 02/27/07
   Trial Testimony Date: 03/12/07

4) ACT South and Allergy Clinic v. Reco Electric
   Case #: CJ-04-7049
   District Court of Tulsa County, State of Oklahoma
   Deposition Date: 08/08/07

5) Golden Corral Corporation v. Rucker Mechanical Plumbing Heating
   Case #: CJ-2006-6333
   District Court of Oklahoma County, State of Oklahoma

Deposition Date: 11/12/07

6) Hunter's Chase OKC, LLC v. Watts & Company, LLC, and  
Elliott & Company, Architects, Inc.,  
Case #: CJ-2005-5365  
District Court of Oklahoma County, State of Oklahoma  
Deposition Date: 01/08/08

7) Providence/Trinity Baptist Church v. GuideOne Elite Insurance Company  
Case #: CIV-06-1201-D  
District Court for the Western District of Oklahoma, State of Oklahoma  
Deposition Date: 02/15/08

8) Claud and Sharon Walker v. Farmer's Group, Inc. etc.  
Case # CJ-2004-680(H)  
District Court of Cleveland County, State of Oklahoma  
Deposition Date: 02/29/08

9) Hunter's Chase OKC, LLC v. Watts & Company, LLC, and  
Elliott & Company, Architects, Inc.  
Case #: CJ-2005-5365  
District Court of Oklahoma County, State of Oklahoma  
Trial Testimony Date: 06/12/08

10) Claud and Sharon Walker v. Farmer's Group, Inc. etc.  
Case # CJ-2004-680(H)  
District Court of Cleveland County, State of Oklahoma  
Trial Testimony Date: 06/25/08

11) John and April Arch-Espigares v. State Farm Fire and Casualty Company  
Case #: CJ-2006-5000  
District Court of Tulsa County, State of Oklahoma  
Deposition Date: 07/18/08

12) Monica Brown v. Jerry Meek; Apollo Building Systems  
Case #: CJ-2007-4279  
District Court of Oklahoma County, State of Oklahoma  
Deposition Date: 09/09/08

13) American Waste, Inc., v. Kevin Hinchey; Miles & Daughters, Inc and  
Emanuel E. Edem  
Case #: CJ-2006-5644  
District Court of Oklahoma County, State of Oklahoma  
Deposition Date: 09/10/08

14) American Waste, Inc., v. Kevin Hinchey; Miles & Daughters, Inc and Emanuel E. Edem  
Case #: CJ-2006-5644  
District Court of Oklahoma County, State of Oklahoma  
Trial Date: 12/03/08

15) John and April Arch-Espigares v. State Farm Fire and Casualty Company  
Case #: CJ-2006-5000  
District Court of Tulsa County, State of Oklahoma  
Trial Date: 02/05/09

16) Dennis G. Aime v. State Farm Fire and Casualty Company  
Case #: 07-4839  
United States District Court  
Eastern District of Louisiana, State of Louisiana  
Deposition Date: 03/12/09

17) Kathleen and Gordon Schafer v. State Farm Fire and Casualty Company  
Case #: 06-8262 Section "K"(2)  
United States District Court  
Eastern District of Louisiana, State of Louisiana  
Trial Date: 04/08/09

18) Robert Fjeldsted v. Farmers Insurance Company  
Case #: CJ-2007-8213  
District Court of Tulsa County, State of Oklahoma  
Deposition Date: 04/29/09

19) JMJ Properties v. State Farm Fire and Casualty Company  
Case #: Civil Action # 08-1384  
United States District Court  
Eastern District of Louisiana, State of Louisiana  
Deposition Date: 07/28/09

20) Eakle v. Priscilla Carder, Copper Neal Ltd., dba Realty Executives Metro  
Case #: CJ-2007-7605  
District Court of Oklahoma County, State of Oklahoma  
Deposition Date: 08/26/09

21) Carolyn Means and John Means v. David Patterson and Maureen Realty  
Case #: CJ-2008-158  
District Court of Carter County, State of Oklahoma  
Deposition Date: 10/27/09

22) Shirley A. Darrell v. Urban Contractors, Inc.,
    Case #: CJ-2006-2815
    District Court of Oklahoma County, State of Oklahoma
    Deposition Date: 01/15/10

23) Shirley A. Darrell v. Urban Contractors, Inc.,
    Case #: CJ-2006-2815
    District Court of Oklahoma County, State of Oklahoma
    Trial Date: 03/11/10

24) Robert Fjeldsted v. Farmers Insurance Company
    Case #: CJ-2007-8213
    District Court of Tulsa County, State of Oklahoma
    Trial Date: 05/04/10

25) George and Ana Browning v. Mark Dale and Carriage Homes
    Case #: CJ-2009-5529
    District Court of Oklahoma County, State of Oklahoma
    Trial Date: 07/14/10

26) Vernon Bindel and Brenda Bindel v. Terry G. Gartside Company
    Case #: CJ-2008-603
    District Court of Creek County, State of Oklahoma
    Deposition Date: 08/25/10

27) Gregory B. Sims and Jo Ann Sims v. Lou Jean Prince; etc. Remax
    Case #: CJ-2008-366
    District Court of Comanche County, State of Oklahoma
    Deposition Date: 08/27/10

28) Gregory B. Sims and Jo Ann Sims v. Lou Jean Prince; etc. Remax
    Case #: CJ-2008-366
    District Court of Comanche County, State of Oklahoma
    Trial Date: 09/30/10

29) JMJ Properties v. State Farm Fire and Casualty Company
    Case #: Civil Action # 08-1384
    United States District Court
    Eastern District of Louisiana, State of Louisiana
    Trial Date: 10/14/10

30) Neil C. Abramson v. State Farm Fire and Casualty Company
    Case #: 2009-11718, Division E-7
    Civil District Court

      Parish of Orleans, State of Louisiana
      Deposition Date:  November 30, 2010

31)    Todd A. Archbald and Susan S. Archbald v. MAG Enterprises and Michael A. Gilles v. Manuel Ruiz, L. Christopher Curtis
      Case #:  2007-458
      District Court of Oklahoma County, State of Oklahoma
      Deposition Date:  December 21, 2010

32)    MM Property Holding, LLC v. J. L. Walker Construction, Inc.
      AAA Case No. 71-110-00732-09 02
      Oklahoma Interventional Pain Management Clinic
      Arbitration Date:  February 8, 2011

**Seminars/Publications:**

1) *The Mold Challenge in Oklahoma*, Continuing Legal Education (CLE) with the National Business Institute, July 14, 2003, Oklahoma City, Oklahoma

2) *The Mold Challenge in Oklahoma*, Continuing Legal Education (CLE) with the National Business Institute, April 19, 2004, Oklahoma City, Oklahoma