# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| NICOLAS LOPEZ, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) NO. CIV-10-0584-HE |
| FARMERS INSURANCE COMPANY, INC., ET AL., | ) ) ) ) |
| Defendants. | ) |

## ORDER

There are two Daubert motions pending in this case, one filed by each party. Plaintiff's motion [Doc. #76] seeks to exclude the testimony of Michael J. Berryman, whom defendant offers as an expert on roofing issues and other related matters in the case. Defendant's motion seeks to exclude the testimony of Brian Webb, whom plaintiff offers on similar issues. The parties have submitted, in addition to each witness' expert report, deposition testimony from each, plus other evidence. The court concludes the parties' submissions are a sufficient basis for resolving the two motions and that a hearing is unnecessary.

The general standards for a Daubert challenge to expert testimony are well established. "In accord with [Rule 702], the Supreme Court has determined that the [trial judge] 'must ensure that any and all scientific testimony or evidence is not only relevant, but reliable.'" Bitler v. A.O. Smith Corp., 400 F.3d 1227, 1232 (10th Cir. 2004) (quoting Daubert, 509 U.S. at 589). This gatekeeper function applies to all expert testimony, not merely to that deemed to be "scientific" in nature. Kumho Tire Co. Ltd. v. Carmichael, 526

U.S. 137, 147-49 (1999). Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In deciding the admissibility of expert testimony, the court must determine whether the expert is proposing to testify to scientific or other specialized knowledge which will assist the trier of fact in understanding or determining a fact in issue. Daubert, 509 U.S. at 592. The court first determines whether the proposed expert is qualified to offer an opinion on the issues involved in the particular case. Ralston v. Smith & Nephew Richards, Inc., 275 F.3d 965, 969 (10th Cir. 2001). A qualified expert must possess the necessary knowledge, skill, experience, training or education relevant to the facts at issue. *Id.* The court then must conduct a two-part inquiry to fulfill its Daubert gatekeeping role, determining first if the expert's proffered testimony has "'a reliable basis in the knowledge and experience of his [or her] discipline.'" Bitler, 400 F.3d at 1232-33 (quoting Daubert, 509 U.S. at 592). In making this determination, the district court must decide whether the reasoning or methodology underlying the testimony is scientifically valid. *Id.* at 1233. Second, the district court must inquire "into whether proposed testimony is sufficiently 'relevant to the task at hand.'" *Id.* at 1234 (quoting Daubert, 509 U.S. at 597). Is there an appropriate "fit" between the evidence offered and the material issue to which it is directed?

The court also considers the related question of helpfulness to the jury. Expert

testimony is unnecessary where it addresses a question the jury is capable of assessing or determining for itself. Thompson v. State Farm Fire & Cas. Co., 34 F.3d 932, 941 (10th Cir. 1994). Further, the proposed testimony may not go to ultimate issues of law governing the jury's deliberations, as instructions on the law are the function of the court. United States Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd., 582 F.3d 1131, 1150 (10th Cir. 2009); Specht v. Jensen, 832 F.2d 1516 (10th Cir. 1988).

The burden of demonstrating the admissibility of expert testimony, tested against the standards of Daubert and Rule 702, is on the proponent of the testimony. U.S. v. Nachio, 555 F.3d 1234, 1241 (10th Cir. 2009) *(en banc)*; Ralston v. Smith & Nephew Richards, Inc., 275 F.3d 965, 970 (10th Cir. 2001).

Applying these standards to the pending motions, the court concludes both motions should be granted in part and denied in part.

## Michael J. Berryman

Mr. Berryman's proposed opinions, as suggested by his expert report [Doc. #76-1], are essentially these: (1) that weatherman Ross Dixon's indication of a 91% chance of hail having hit plaintiff's house doesn't really prove anything, (2) that Brian Webb's opinion as to roof damage is based on circumstantial evidence and not clear proof that damage occurred, (3) that Diane Luther's opinions about Farmers' conduct is not based on solid assumptions, (4) that a 15 year old wood roof would have been "decimated" by hail the size which plaintiff's witnesses suggest occurred, (5) that such a roof, experiencing hail damage like that suggested by plaintiff, would have had visible leaks and water damage more extensive than

3

what Berryman observed at the house, and (6) that adjustor Merritt's effort to assess roof damage was "professional" and "reasonable."

Certain of the proffered opinions are readily excluded. The court has entered summary judgment as to plaintiff's bad faith claim, hence any opinions as to whether Ms. Merritt's efforts were "professional" or "reasonable" are no longer relevant and will be excluded.[1] Further, Mr. Berryman's opinions as to whether Mr. Dixon's statistical probabilities prove anything or whether Mr. Webb's opinions are persuasive are matters the jury is capable of deciding for itself. No "expert" testimony is necessary as to such matters. Thompson, *supra*.

What remains are Mr. Berryman's opinions which arguably do bear on the remaining issue in this case: would a hail storm of the type plaintiff says hit his house have "decimated" the roof, i.e. could it have created the conditions actually observed as to this roof by others? Was the amount of leakage/damage that Mr. Berryman observed (during his later inspection of plaintiff's house) inconsistent with the damage that would have occurred if a hailstorm of the type/extent suggested by plaintiff had in fact occurred?

Plaintiff argues that Mr. Berryman is not qualified to offer opinions as a roofing or damage specialist, but the court concludes he is qualified to offer the opinions referenced in the preceding paragraph. He has extensive experience in construction, including residential, with experience in inspecting and installing roofs. The lack of formal training or certification

---

[1] *Whether her assessment was <u>accurate</u> is a different matter. The extent of hail damage is, of course, the central remaining issue in this case.*

in the area does not preclude acquiring the necessary expertise through experience.

The court concludes Mr. Berryman is qualified to offer opinions of the type described above and that the basis for his opinions, grounded in his experience, is sufficiently identified to survive Daubert scrutiny. He will be permitted to testify as to the likely impact of a major hailstorm on an aged wood roof and as to the extent of damage that might be anticipated from such an event.

### Brian Webb

Mr. Webb's proposed opinions, as suggested by his expert report [Doc. #78-1], may be summarized as follows: (1) that Mr. Cagle's description of plaintiff's roof was consistent with the damage Webb observed to the roof next door, (2) that many homes in the housing addition had their roofs replaced, many by his company, as a result of the February 10, 2009, storm, (3) that the photos taken of plaintiff's roof reflect wind and hail damage, (4) that it was "unfair" for Farmers to base its decision on the condition of the shingles nine months later, and (5) that "fresh" splits in the shingles (suggestive of hail damage) will disappear over a matter of months.

As with Mr. Berryman, certain of Mr. Webb's opinions must be excluded regardless of the court's assessment of his qualifications or its resolution of other Daubert issues. His opinion as to the "fairness" of relying on the condition of shingle splits several months after the storm in question is not pertinent to an issue in this case, as the bad faith claim has been resolved. While his opinion as to what a particular shingle split may indicate or as to the effect of the passage of time is arguably relevant to the remaining issues here, his opinion as

5

to the fairness of defendant's handling or disposition of the claim is not.[2]

Some of Mr. Webb's testimony is not properly the subject of a Daubert analysis. To the extent he proposes to testify as to his personal observations in the Remington neighborhood — the houses which had roofs replaced at particular times,[3] the roofs which his company replaced, etc. — those are matters that any fact witness could testify to upon a predicate showing of personal knowledge and the like.[4] Here, it appears Mr. Webb, as a homeowner in the area and the owner of a roofing company which replaced roofs there, has personal knowledge as to a number of the facts he proposes to testify to and can testify to them to the extent they are proper for a fact witness.[5]

As to the remaining matters Mr. Webb proposes to testify to, principally whether

---

[2]*Given the undisputed evidence that plaintiff's claim was not even submitted until many months after the storm in question, it is not clear what Mr. Webb would have had Farmers, in the interests of "fairness," rely on. In any event, the remaining issue here involves the reliability of conclusions based on an inspection months after the alleged event/cause, not the "fairness" of the timing.*

[3]*The accuracy of the exhibit involving a plat of the neighborhood may present other evidentiary issues, but, as it is essentially a summary of Mr. Webb's personal observations, the court concludes the questions in that regard do not substantially impact the analysis of his opinions subject to Rule 702.*

[4]*Mr. Webb also indicates he was personally present in the area on the day of the storm and personally observed the size of the hail at his residence.*

[5]*To the extent defendant seeks to exclude any evidence of damage to surrounding houses on the basis of relevance, its motion will be denied. While it is no doubt true, as defendant argues and Mr. Webb concedes, that hail is "random" and damage to one roof does not necessarily prove damage to a nearby roof, the question is whether the evidence has "any tendency to make the existence of any [material] fact ... more probable or less probable...." Fed.R.Evid. 401. Testimony that an adjacent roof suffered major hail damage on a particular date is at least some evidence having some tendency to suggest damage to the adjacent property.*

particular photos of plaintiff's roof reflect hail damage and issues as to the inferences to be drawn from shingle "splits" of various ages, the court concludes he may do so as against Daubert concerns. Defendant argues he is not qualified to offer these opinions but, like Mr. Berryman, Mr. Webb has extensive experience in the roofing business. A lack of formal training does not preclude his testimony where, by reason of his experience, he has acquired the necessary expertise.[6] Other issues raised by defendant may well be appropriate for cross examination,[7] but the court concludes they go to weight rather than admissibility.

## Conclusion

For the reasons stated, the parties' motions to exclude testimony [Doc. Nos. 76 & 78] are **GRANTED IN PART** and **DENIED IN PART**, as stated above.

**IT IS SO ORDERED**.

Dated this 24th day of May, 2011.

JOE HEATON
UNITED STATES DISTRICT JUDGE

---

[6] *Defendant's objection that Mr. Webb's opinions should be excluded because they are not based on peer reviewed theories or techniques, or that he has not published or done formal studies, is unpersuasive in this context. There is no indication that Mr. Berryman's experience-based opinions would have survived such an objection either.*

[7] *Mr. Wood has substantial experience with examining and replacing roofs, but has apparently installed only non-wood roofs. Further, to the extent Mr. Wood's opinion as to damage to plaintiff's roof is based on his personal view of it, that "examination" took place from the roof of the adjacent house.*